**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,                               CASE NO. 07-CR-50906

-vs-                                             PAUL D. BORMAN
                                                    UNITED STATES DISTRICT JUDGE

D-1 GEOFFREY FIEGER,
D-2 VERNON JOHNSON,

        Defendants.
_____/

**OPINION AND ORDER
GRANTING COMERICA BANK'S MOTION TO QUASH SUBPOENA DUCES TECUM**

        Before this Court is Comerica Bank's ("Comerica") October 19, 2007 Motion to Quash Defendant's Fieger Subpoena Duces Tecum (Doc. No. 1). The Defendant Fieger filed his Response on October 31, 2007. The Government filed a Memorandum in Support of Comerica's Motion to Quash on November 6, 2007. A hearing on this Motion was held on November 8, 2007.

**I.    BACKGROUND**

        On August 22, 2007, a grand jury issued a ten count indictment, charging Defendant Geoffrey Fieger and Defendant Vernon Johnson with conspiring to use corporate funds to make prohibited campaign contributions to the 2004 John Edwards Presidential Campaign in the amount of $127,000 "and to disguise those prohibited contributions as legitimate payments, in order to deceive the Federal Election Commission, the Edwards for President Committee, and the public." The indictment further charges Defendants with making and causing illegal conduit contributions and corporate contributions to the campaign in 2003 and 2004 (Counts III and V – only Defendant

Fieger); causing the Edwards Campaign to unwittingly submit false statements to the Federal Election Committee (Counts VI-IX; Counts VIII and IX – only Defendant Fieger); and Defendant Fieger alone with obstructing justice in relation to the grand jury investigation into this matter (Count X).

Defendant Fieger is the president of the law firm Fieger, Fieger, Kenny, Johnson and Giroux, P.C. Co-defendant Johnson is an officer and a minority shareholder in the firm. (Indict. ¶¶ 3, 4). During 2003 and 2004, Defendant Fieger is alleged to have served as a fundraiser for the Edwards for President Campaign. (*Id.* ¶ 5). The indictment details the "conspiracy" between Defendants Fieger and Johnson, as one wherein individuals who worked for or with Defendants would contribute $2,000, the maximum individual amount, to the Edwards Campaign and thereafter would be fully reimbursed by funds from the firm. (*Id.* Count I, ¶ 4).

On or about October 1, 2007, Defendant Fieger served a criminal subpoena duces tecum on Comerica which sought disclosure by October 16, 2007, of:

> Any and all requests or written documents of any kind, including National Security Letters, served upon Comerica Bank at any time since January 2004 by the United States Attorney General, U.S. Department of Justice, FBI, or any United States Attorney's Office to obtain any information, including bank and financial information, concerning Geoffrey N. Fieger, the law firm of Fieger, Fieger, Kenney & Johnson, P.C., and/or the employees and/or spouses of employees of the Fieger law firm.

(Comerica Br. Ex. A, Criminal Subpoena). On October 10, 2007, Comerica contacted Defendant Fieger by letter, objecting to the disclosure of the requested documents. (Comerica. Br. Ex. B, Letter from Comerica to Defendant Fieger). As noted above, on October 19, 2007, Comerica Bank filed a Motion to Quash a Subpoena. (*See* Case No. 07-50906). Defendant Fieger filed his

Response on October 31, 2007. The Government also submitted an amicus Memorandum of Law in Support of Motion to Quash Subpoena on November 6, 2007.

**II. ANALYSIS**

Defendant Fieger served Comerica with its criminal subpoena pursuant to Federal Rule of Criminal Procedure 17(c). Rule 17 states in pertinent part:

(c) Producing Documents and Objects.

    (1)    *In General.* A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Pursuant to Rule 17(c)(2), a court may quash or modify a subpoena if compliance would be unreasonable or oppressive. Pursuant to *United States v. Nixon*, 418 U.S. 683, 700 (1974), a Rule 17(c) subpoena will only be issued if the information that is sought is: (1) relevant; (2) admissible; and (3) specifically identified.

Comerica claims the Court should quash the subpoena because production of the requested documents exposes them to potential liability under 18 U.S.C. § 1510(b) and 12 U.S.C. § 3420(b). Section 1510(b)(2) states in pertinent part that:

    (2)    Whoever, being an officer of a financial institution, directly or indirectly notifies--

        (A)    a customer of that financial institution whose records are sought by a grand jury subpoena; or

        (B)    any other person named in that subpoena;

> about the existence or contents of that subpoena or information that has been furnished to the grand jury in response to that subpoena, shall be fined under this title or imprisoned not more than one year, or both.

Defendant Fieger argues this statute does not apply in the present circumstance because 1510(b)(3)(B) defines "subpoena for records" as meaning a "Federal grand jury subpoena or Department of Justice subpoena (issued under section 3486 of title 18), for customer records that has been served relating to a violation of, or a conspiracy to violate [certain crimes]." 18 U.S.C. § 1510(b)(3)(B). It is apparent that Defendant Fieger is not charged with any of those specifically enumerated offenses. However, Defendant Fieger's argument for enforcement of his subpoena duces tecum cannot be reconciled with a plain reading of the statute. Section 1510(b)(2) does not refer to a "subpoena for records" but rather states "grand jury subpoena." Subsection (b)(1) however uses the exact phrase "subpoena for records" and sets forth that such a disclosure is a felony offense, in contrast with subsection (b)(2) making the more general disclosure a misdemeanor offense.

Therefore, it appears from a plain reading of 18 U.S.C. § 1510(b)(2), Comerica could be liable (for a misdemeanor offense) if it disclosed the grand jury subpoenas sought by Defendant Fieger.[1]

---

[1] The Court notes that Comerica's reliance upon the Right to Financial Privacy Act ("RFPA"), 12 U.S.C. § 3420(b), is misplaced. Section 3420(b) states in pertinent part:

> (1) No officer, director, partner, employee, or shareholder of, or agent or attorney for, a financial institution shall, directly or indirectly, notify any person named in a grand jury subpoena served on such institution in connection with an investigation relating to a possible–
>
> (A) crime against any financial institution or supervisory agency or crime involving a violation of the Controlled Substance Act, the Controlled Substances Import and Export Act, [or other various crimes]; or

Defendant Fieger contends that an interpretation of § 1510(b)(2) which prohibits all the disclosure of grand jury subpoenas would "render superfluous [the RFPA] that ha[s] specifically set forth the instances in which grand jury subpoenas served on financial institutions are to be kept secret." (Def. Br. at 4). However, the Court finds the RFPA does not set forth any such mandatory obligations upon the government or the financial institutions regarding the disclosure of grand jury subpoenas, but does provide the Court with the power to order a financial institution to keep such information secret in certain circumstances.

Defendant Fieger relies upon 12 U.S.C. § 3413(i), which states in pertinent part:

> Nothing in this chapter (except sections 3415 and 3420 of this title) shall apply to any subpoena or court order issued in connection with proceedings before a grand jury, except that a court shall have authority to order a financial institution, on which a grand jury subpoena for customer records has been served, not to notify the customer of the existence of the subpoena or information that has been furnished to the grand jury, under the circumstances and for the period specified and pursuant to the procedures established in [section 3409] of this title.

Section 3409 provides that the Government may apply to a court to delay customer notification by a financial institution under certain circumstances, i.e., the threat of intimidation of witnesses, danger to persons, flight from prosecution. 12 U.S.C. § 3409(a).

First, the Court notes the express language of § 3413 which states that nothing in the statute, save sections of §§ 3415 and 3420 which do not apply in this case, shall apply to any grand jury

---

(B) conspiracy to commit such a crime,November 26, 2007

about the existence or contents of such subpoena, or information that has been furnished to the grand jury in response to such a subpoena.

It appears that § 3420 only applies when the investigation relates to violations certain offenses which are not alleged here. Therefore, Comerica's argument that § 3240(b) forbids its disclosure of a grand jury subpoena in this case is without merit.

5

subpoenas. Defendant Fieger argues that the Government must seek a "gag order" pursuant to § 3409 to keep a bank from revealing the existence of a grand jury subpoena. The Court rejects this argument.

First, § 3413(i) provides that a court can issue an order that a bank not notify a customer of the existence of a grand jury subpoena in the circumstance and for the time period provided for in § 3409. Defendant Fieger avers that § 3413 provides that the government must seek under § 3409 to get the "gag order" and to keep the bank from disclosing the information. However, § 3413 expressly states that no section (save §§ 3415 and 3420) of the statute is applicable in connection with grand jury subpoenas, which includes § 3409. The fact § 3413 imports the circumstances and time limit of § 3409 does not mean that § 3409 applies in situations involving grand jury subpoenas.[2]

Further, nothing in § 3413(i) indicates that a financial institution or the government is obligated to disclose the grand jury subpoena to the customer. Indeed, the text of § 3413(i) states the opposite, as it precludes grand jury subpoenas from the scope of the RFPA. *See Ismail v. Old Kent Bank & Trust Co.*, 893 F.2d 1334, No. 89-1495, 1990 WL 3492, *4 (6th Cir. Jan. 19, 1990) (unpublished table opinion) (holding that pursuant to § 3413 a financial institution is not required to notify its customer of the existence of a grand jury subpoena). Therefore, a more logical interpretation, and one which does not render § 1510(b) superfluous, is that § 3415(i): (1) precludes grand jury subpoenas from the scope of the RFPA; (2) a financial institution is not obligated to disclose the existence of a grand jury subpoena; (3) the government is not obligated to disclose the

---

[2] Consistent with this interpretation is the fact that § 3409 provides a mechanism for when a government authority may be relieved of the obligation to serve copies of subpoenas and requests on customers. *See In re Grand Jury Subpoena Duces Tecum*, 575 F. Supp. 1219, 1221 (E.D. Penn. 1983).

existence of a grand jury subpoena; and (4) a court has authority to order a financial institution not to disclose such information but such an order will not always be necessary or mandatory as the financial institution has discretion in whether to reveal such information. This is consistent with the view that the RFPA gives the financial institution "complete discretion in its dealing with the customer relative to the existence of a grand jury investigation." *In re the Grand Jury Proceedings of Castiglione*, 587 F. Supp. 1210, 1214 (E.D. Cal. 1984).

Defendant Fieger also argues that a copy of a subpoena duces tecum he obtained from a different source, Paychex, which had also been subpoenaed, proves that the Government threatened Comerica to keep its silence regarding the grand jury subpoenas. The Court finds this claim to be without merit or support. That subpoena only suggests that the party not reveal the existence of the grand jury investigation. Further, the fact that Paychex turned over the subpoena to Fieger illustrates that the accounting firm did not actually fear prosecution for obstruction of justice. Finally, Comerica itself represented to the Court it was not threatened through the subpoenas. Indeed, Comerica stated that the only threat it experienced with regard to the instant subpoena came from Defendant Fieger, who threatened Comerica with a lawsuit if it failed to turn over the items requested in his subpoena duces tecum.

**IV.    CONCLUSION**

For these reasons, the Court **GRANTS** Comerica's Motion to Quash the Subpoena.

**SO ORDERED**.

                                              s/Paul D. Borman
                                              PAUL D. BORMAN
                                              UNITED STATES DISTRICT JUDGE

Dated: November 27, 2007

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on November 27, 2007.

                                              s/Denise Goodine
                                              Case Manager